**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COLDWELL BANKER REAL ESTATE LLC, )<br>f/k/a COLDWELL BANKER REAL ESTATE )<br>CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PREMIER REAL ESTATE BROKERAGE )<br>SERVICES, INC., d/b/a COLDWELL )<br>BANKER PREMIER, and KARL S. )<br>GASBARRA, )<br>)<br>Defendants. ) | No. 09 C 2592<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

This suit arises from the failure on the part of Defendant and Franchisee Premier Real Estate Brokerage Services ("Premier") to pay various fees it owed Plaintiff and Franchisor Coldwell Banker under four franchise agreements the parties executed in December 2003. Plaintiff also sues Premier's owner, Karl S. Gasbarra, on his personal guaranties. Additionally, both Premier and Gasbarra have defaulted on a loan they obtained from Plaintiff to help foster the growth of the four new branches, thereby prompting Plaintiff to exercise an acceleration clause in the loan document and seek collection of the remaining principal on the loan. Plaintiff seeks summary judgment on the following claims: breach of contract against Premier (Count I); breach of the guaranties against Gasbarra (Count III); and breach of contract against both Defendants on the loan (Count IV).[1] For the reasons explained herein, the court enters a liability judgment in favor of Plaintiff on all counts, but will schedule an evidentiary hearing to determine the amount of damages.

## FACTUAL BACKGROUND[2]

---

[1] Plaintiff's Second Amended Complaint included a quantum meruit claim against Premier (Count II) as an alternative to the breach of contract claim, but Plaintiff has not moved for summary judgment on that claim.

[2] The facts presented here are drawn predominantly from Plaintiff's statement of facts,
(continued...)

Defendant Premier Real Estate Brokerage Services Inc. ("Premier") entered into four franchise agreements (the "Agreements") with Coldwell Banker, effective December 29, 2003, to operate real estate brokerage offices in Rockford, Illinois; Roscoe, Illinois; Belvidere, Illinois; and Beloit, Wisconsin.[3] (Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts ¶ 7.)  Under the Agreements, Coldwell Banker permitted Premier to use the Coldwell Banker name and system in the operation of Premier's brokerage offices.  (Def.'s 56.1 ¶ 8.)  In return, Premier was obligated to pay certain fees, including (1) royalties equal to 6% of all gross revenues upon closing of any transaction; (2) advertising fees equal to 2.5% of Premier's monthly gross revenues, up to $1,000 but no less than $500 per month per office; (3) interest "at the highest applicable rate of interest permitted by law," but not higher than 1.5%, for late payments; and (4) costs and reasonable attorneys' fees, should a judicial proceeding be necessary to enforce the provisions of the Agreements.  (Def.'s 56.1 ¶¶ 9, 10, 11, 12, 15.)  The Agreements also provide that Coldwell Banker is entitled to audit Premier's financial records at will (Def.'s 56.1 ¶ 13), and to terminate the Agreements for a number of reasons, including Premier's failure to pay the fees required by the contract.  (Def.'s 56.1 ¶ 14.)  The Agreements are governed by New Jersey law.  (The Agreements ¶ 16.4.)

---

[2](...continued)
submitted pursuant to Local Rule 56.1, and supporting documents.  Defendant Premier did not file a response to the motion for summary judgment, and although Gasbarra did respond, he does not contest liability.

[3] On their face, the Agreements became effective December 29, 2003 (*see, e.g.*, Real Estate Franchise Agreement for Rockford Office, Ex. 1 to Iuliano Aff., Ex. C to Def.'s 56.1, ¶ 1.5), though Gasbarra did not sign the document until January 30, 2004, and Coldwell Banker did not sign until February 17, 2004.  (*Id.* at ¶¶ 1.1, 1.2.)

The Agreements are identical except for the agreement number and the address of the brokerage office to which they pertain.  (*See* Real Estate Franchise Agreement for Rockford Office, Ex. 1 to Iuliano Aff., Ex. C to Def.'s 56.1; Real Estate Franchise Agreement for Roscoe Office, Ex. 2 to Iuliano Aff., Ex. C to Def.'s 56.1; Real Estate Franchise Agreement for Belvidere Office, Ex. 3 to Iuliano Aff., Ex. C to Def.'s 56.1; Real Estate Franchise Agreement for Beloit Office, Ex. 4 to Iuliano Aff., Ex. C to Def.'s 56.1.)  The personal guaranties signed by Gasbarra and attached to each of the Agreements (*id.* at 34) are also identical.  The court refers to them, collectively, as "the Guaranties."

A provision in the Agreements describes the cash awards, called "Performance Premium Awards" ("PPAs"), that franchisees were eligible to receive upon achieving a certain high level of gross revenues. (Agreements Ex.¶ 7.3.) Plaintiff asserts that payment of the PPAs was contingent upon Premier's compliance with other provisions of the Agreements (Pl.'s Objections and Resp. to Def. Gasbarra's Statement of Facts ¶ 4), but the contract provision Plaintiff cites states only that Plaintiff "may" require franchisees' compliance with the Agreements before issuing a PPA.[4] (Agreements ¶ 7.3.) Moreover, Defendant Gasbarra states that throughout his seventeen years as a Coldwell Banker franchisee, PPAs that Premier has earned have always been paid or credited against any outstanding balance.[5] (Def. Gasbarra's Statement of Facts ¶ 4.)

As suggested by Gasbarra's reference to his seventeen-year relationship with Plaintiff, the Agreements were not the initiation of a new business relationship. Gasbarra had owned at least one Coldwell Banker franchise for many years; on January 27, 2004, he settled a dispute, on behalf

---

[4] The relevant portion of the Agreements proceeds as follows:

Franchisor may establish reasonable conditions to Franchisor's obligation to pay a Performance Premium Award, including such conditions as may be set forth in the Policy Manual and the following conditions, without limitation:

1. Franchisee and its Owners and Related Parties shall be in compliance with the Agreement and all other agreements with Franchisor or any of its Related Parties;

. . .

(Agreements ¶ 7.3.) The court notes, further, that no party has filed a copy of the aforementioned policy manual.

[5] Gasbarra asserts that he is entitled to the PPA awards in his statement of facts which, as Plaintiff notes, does not comply with Local Rule 56.1; Gasbarra does not cite the record or any attached documents in support of his assertions regarding Coldwell Banker's past practice of paying or crediting PPAs. But he did attach a short, sworn affidavit to the statement of facts attesting to his personal knowledge, and to the truth of all statements therein. As a *pro se* litigant, "[Gasbarra's] submissions should be held to less exacting standards than those drafted by counsel." *Maddox v. Love*, 688 F.3d 709, 721 n.6 (7th Cir. 2011) (citation omitted). Given its obligation to construe *pro se* submissions leniently, the court overlooks Gasbarra's noncompliance with Local Rule 56.1 and construes the limited evidentiary materials he has submitted in the light most favorable to him.

of Premier and in his individual capacity, arising out of his operation of the franchise. (Agreement to Settle Outstanding Past Due Balances for Royalties and Advertising and Audit Fees (hereinafter "Letter Agreement"), Ex. 1 to Iuliano's Aff. (hereinafter "Iuliano's Second Aff."), Ex. A to Pl.'s Resp.) Pursuant to that Letter Agreement, Coldwell Banker converted $225,000 of Defendants' unpaid balance at the time into a Development Advance Promissory Note ("DAN").[6] (Letter Agreement ¶ 1.) Defendants' substantial unpaid balance as of January 2004 demonstrates that they had been in business with Plaintiff, and that they had already defaulted on the payment of a great many fees, long before the execution of the Agreements.

The DAN appears to be Plaintiff's attempt to reset the relationship with Defendants. Executed on December 23, 2003, the DAN obligated Defendants to pay Coldwell Banker the principal sum of $225,000, "which amount shall bear no interest." (Development Advance Promissory Note ("DAN"), Ex. E to Second Am. Compl., at 1.) The DAN required Defendants to pay the principal on the date eight years from "the determination date," as calculated therein,[7] but also provided for the annual reduction of the principal by one-ninth if Defendants fulfilled all obligations under the Agreements and maintained aggregate gross revenues across all of Premier's offices of at least $3 million. (DAN at 1.) If Defendants did not meet these conditions, a portion of the principal would be due annually on the determination date. (DAN at 1.) Regardless of any payments made by Premier, Coldwell Banker retained the right to apply PPA payments due to Premier to the principal instead. (DAN at 1.) Coldwell Banker further retained the right, should

---

[6] Gasbarra appears to believe that the DAN does not obligate him to pay damages because Coldwell Banker "retained the proceeds and never surrendered the funds to Franchisee/Gasbarra." (Def.'s Statement of Facts ¶ 5.) Indeed, the DAN does not state, and Plaintiff does not assert, that Coldwell Banker ever transferred $225,000 in funds to Premier or Gasbarra upon execution of the DAN. Instead, the DAN was part of a settlement agreement; Coldwell Banker agreed to settle Defendants' substantial balance as long as Defendants agreed to sign the DAN and to other terms and conditions. (January 27, 2004 Letter Agreement, Ex. 1 to Iuliano's Second Aff., Ex. 1 to Pl.'s Resp.)

[7] The DAN states that the first determination date is defined "below" in the note, but the court cannot find any such express definition of the determination date.

4

Premier be in default of any of the Agreements, to "accelerate the unpaid [p]rincipal and all interest accrued thereon to become immediately due and payable . . . ." (DAN at 1-2.) Finally, the DAN required Defendants to pay all attorneys' fees and costs incurred in any attempt by Coldwell Banker to collect any payment due under the DAN. (DAN at 2.) Like the Agreements, the DAN is governed by New Jersey law. (DAN at 3.)

Gasbarra signed the Agreements and the DAN on behalf of Premier. (Agreements ¶ 1.2; DAN at 3.) He also executed a "Guaranty of Payment and Performance" for each of the Agreements and co-signed the DAN in his individual capacity. (Agreements at 34; DAN at 3.) Under the Guaranties, Gasbarra is jointly and severally liable for all obligations due under the Agreements, including "all franchise Royalties, Advertising Fees, . . . audit fees, assignment fees, attorneys fees, referral fees, obligations to idemnify and other such charges, fees, and assessments provided for under the [Agreements]." (Guaranties at 1.) The Guaranties, too, are governed by New Jersey law. (Guaranties at 3.)

At no point in his response to Plaintiff's motion for summary judgment does Gasbarra contest the validity of the Agreements, the Guaranties, or the DAN. Gasbarra also does not contest Plaintiff's allegations that Premier breached the Agreements, that he breached the Guaranties, and that both Premier and Gasbarra breached their obligations under the DAN. His only apparent dispute concerns "the amount claimed by Plaintiff to be in breach . . . ." (Def. Gasbarra's Resp. to Pl.'s Mot. for Summ. J., at 1.)

The exact date(s) of the breach are not apparent from the record, but Coldwell Banker retained counsel for collection purposes in the fall of 2008. (Iuliano Aff., Ex. C to Def.'s 56.1, ¶¶ 16-17.) By a letter dated November 7, 2008, Coldwell Banker's counsel advised Gasbarra of Premier's failure to pay more than $150,000 in fees owed and threatened suit within 30 days. (Nov. 7, 2008 Letter, Ex. 5 to Iuliano Aff., at 1.) The letter refers to an accounting statement, but no such statement is attached to the copy that appears in the record. (*Id.*)

5

Evidently, there was no resolution; on April 29, 2009, Coldwell Banker filed this lawsuit. (*See* Compl. [1].) Coldwell Banker nevertheless continued negotiations to settle the dispute: in a letter dated March 4, 2010, a contract administrator at Coldwell Banker reminded Gasbarra that Premier's account was delinquent and stated that Gasbarra owed $124,190.78. (Mar. 4, 2010 Letter, Ex. 6 to Iuliano Aff., at 1.) In the event of termination, the letter explained, Gasbarra would be required to pay the balance, post-termination audit fees, and $100,000 in remaining DAN principal.[8] (*Id.*)

There is no direct evidence in the record concerning how or whether Gasbarra responded to the March 4, 2010 letter. Coldwell Banker sent a follow-up letter on June 30, 2010, however, stating that, although Gasbarra had made some payments on his account, he had not cured the default. (June 30, 2010 Letter, Ex. 7 to Iuliano Aff., at 1.) Instead, the balance due had actually increased since the March 4, 2010 letter, to $130,996.98. (*Id.*) In the June 30, 2010 letter, Coldwell Banker also volunteered to extend the termination deadline until August 4, 2010. (*Id.*) Gasbarra did not cure the default or to negotiate another deadline extension. As of August 3, 2010,[9] Coldwell Banker terminated the Agreements "and accelerated the $150,000 balance due under the DAN." (Def.'s 56.1 ¶ 21.)

As noted, there is no genuine dispute concerning Defendants' liability. What is disputed is the amount of damages Defendants owe Coldwell Banker as a result of the breaches. Based on the affidavit of Debbie Iuliano, Vice-President of Franchise Administration & Compliance, Coldwell Banker submitted a table stating the various fees owed by each of the four Premier branches (not

---

[8] The letter threatened termination of the franchise agreement for the Rockford office; the subject line declares Coldwell Banker's intent to terminate "franchise [a]greement #135052-0001," which is the agreement number that corresponds to the Rockford brokerage office. The court presumes, however, and Coldwell Banker's subsequent conduct confirms, that the intent of the letter was to threaten termination of all Premier's franchise agreements.

[9] In her affidavit, Iuliano states that Coldwell Banker terminated the agreements and accelerated payment under the DAN on August 3, 2010, even though the final warning letter sent to Gasbarra set the deadline as August 4, 2010.

including attorneys' fees and interest):

| Franchise Agreement | Royalty Fees | Lead Router Fee | Advertising Fees | Audit Royalty Fees | Audit Interest and Charges | Total |
|---|---|---|---|---|---|---|
| Rockford, IL | $35,758.39 | $5,250.00 | $36,056.77 | $30,541.13 | $10,798.64 | $118,404.93 |
| Roscoe, IL | $63,831.41 | $0.00 | $41,296.52 | $1,339.73 | $344.38 | $106,812.04 |
| Belvidere, IL | $27,111.29 | $0.00 | $35,631.89 | $2,755.39 | $1,125.71 | $66,624.28 |
| Beloit, WI | $31,402.96 | $0.00 | $37,873.49 | $551.29 | $168.58 | $69,996.32 |
| **TOTAL DUE:** | | | | | | **$361,837.57** |

(Def.'s 56.1 ¶ 28.) Attached to Iuliano's affidavit is a "Custom Account Status Report" ("the Report"), a business record kept by Coldwell Banker in the ordinary course of business that, according to Iuliano, shows a "breakdown" of the fees owed. (*Id.*; the Report, Ex. 8 to Iuliano Aff.) The Report is fifty-two pages long and lists each individual fee owed by Premier, broken down by brokerage office and fee category (royalties, audit royalty fees, audit interest and charges, advertising fees, etc.). (*See* the Report at 1-52.) It also reflects the remaining annual principal payments due under the DAN, which total $150,000. (Report at 7.)

Despite the detail, Gasbarra contends he is unable to confirm royalty fees owed based on the Report because it includes no reference to property addresses, sales prices, or commissions earned. (Def. Gasbarra's Resp. at 2-3.) He also appears to claim that he has, in fact, paid some charges that appear on Plaintiff's Report. (*Id.* at 3.) Gasbarra further disputes Coldwell Banker's damages calculation based on what he claims is Coldwell Banker's standard practice of forgiving all audit and penalty fees as well as interest charges. (Def. Gasbarra's Statement of Facts ¶ 3.) He also contends that his PPA payments for the years 2006, 2007, and 2008 should be, but have not yet been, credited to the balance he owes Coldwell Banker. (Def. Gasbarra's Statement of Facts ¶ 4.)

Initially, both Premier and Gasbarra were represented by counsel in this suit, but on March 18, 2011—shortly after Coldwell Banker filed the motion for summary judgment at issue here—Defendants' counsel withdrew. Since that date, Gasbarra has not retained new counsel to

represent him or Premier. As required by Local Rule 56.2, Plaintiff sent Gasbarra a letter on April 27, 2011, informing him of the requirements under Local Rule 56.1 for filing his response to Plaintiff's motion for summary judgment. (Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment [57].) Gasbarra filed his response to Plaintiff's motion for summary judgment, and a corresponding statement of facts, shortly thereafter.

## DISCUSSION

### I. Liability

#### a. Standard on Summary Judgment

Plaintiff Coldwell Banker has moved for summary judgment against Premier for breach of the Agreements (Count I) and breach of the DAN (Count IV) and against Gasbarra for breach of the Guaranties (Count III) and also for breach of the DAN (Count IV). Summary judgment is proper where, construing all facts in the light most favorable to the non-moving party, *Hanners v. Trent*, ___ F.3d ___, 2012 WL 899062, *6 (7th Cir. Mar. 19, 2012) (citation omitted), there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Foster v. State Farm Fire and Cas. Co.*, ___ F.3d ___, 2012 WL 884857, *3 (7th Cir. Mar. 16, 2012) (citation omitted). "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Hanners*, 2012 WL 899062 at *6 (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)). Summary judgment is "particularly appropriate" where, as here, the dispute centers on contract interpretation. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009).

#### b. Summary Judgment Against Premier

Coldwell Banker wins summary judgment against Premier, essentially, by default. "[A] corporation is legally incapable of appearing in court unless represented by counsel—'corporations must appear by counsel or not at all.'" *Philos Technologies, Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857-58 (7th Cir. 2011) (quoting *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d

1423, 1427 (7th Cir. 1985)). After counsel for Premier and Gasbarra withdrew in March 2011, Gasbarra never obtained new representation for Premier, despite the court's admonishment to that effect. (*See* April 25, 2011 Minute Order [56]) ("Defendant Gasbarra is reminded that a corporation can be represented in court only by a licensed attorney."). Nor can a *pro se* litigant like Gasbarra proceed on behalf of Premier. *Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008) (citing 28 U.S.C. § 1654).

It is not clear whether Gasbarra intended to file a response to Plaintiff's motion for summary judgment on behalf of Premier. On one hand, his motion is titled simply "Defendant Gasbarra's Response to Plaintiff's Motion for Summary Judgment," but on the other, he repeatedly refers to himself as "Franchisee/Gasbarra," thereby conflating Premier's legal existence with his own individual capacity as a guarantor and co-signer on the DAN. (Def. Gasbarra's Resp. at 1.) Gasbarra may not respond on behalf of Premier, however, and thus, Premier has failed to respond to Coldwell Banker's factual allegations against it. Under Local Rule 56.1, a responding party's failure to controvert the moving party's factual statements constitutes an admission of those facts for summary judgment purposes. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (citing L.R. 56.1). As against Premier, Plaintiff's statement of material facts is deemed admitted.

Under New Jersey law, which governs the Agreements, to establish a breach by Premier, Coldwell Banker must show that (1) a valid contract existed between the parties; (2) Premier breached the contract; (3) Coldwell Banker fulfilled its own contractual obligations; and (4) Coldwell Banker suffered damages resulting from the breach. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Plaintiff has provided evidence that (1) it entered into four valid franchise agreements with Premier; (2) Premier failed to pay various fees, including royalty and advertising fees, as required by the Agreements; (3) Coldwell Banker allowed Premier to use its system and marks from the date of the Agreements through their termination in 2010; and (4) Coldwell Banker suffered financial loss as a result of Premier's failure to pay all fees owed under the Agreements.

9

The court grants summary judgment against Premier on Count I.

Premier is similarly liable for the remaining principal on the DAN. Under the terms of the DAN, Coldwell Banker retained the right to "accelerate the unpaid Principal and all interest accrued thereon to become immediately due," should Premier default on the DAN or the Agreements. (DAN at 1-2.) Coldwell Banker properly exercised that acceleration clause on August 3, 2010, when it terminated the franchise agreements based on Premier's failure to pay fees. Thus, the court also grants summary judgment against Premier on Count IV.

### c. Summary Judgment Against Gasbarra

Plaintiff has moved for summary judgment against Gasbarra based on breach of the Guaranties (Count III) and on breach of the DAN (Count IV). Like the Agreements above, the Guaranties are contracts subject to the same standard for proof of breach. Though Gasbarra responded to Plaintiff's motion for summary judgment on his own behalf, he did not contest any of the material facts related to the breaches. The court deems as admitted all Coldwell Banker factual statements regarding the existence, and breach by Gasbarra, of the Guaranties and the DAN.

Specifically, Plaintiff has shown a valid contract of guaranty for each of the Agreements and that Gasbarra breached the Guaranties when he failed to make payments on the fees owed by his corporation Premier under the Agreements. Gasbarra has not argued that Plaintiff failed to meet any of its obligations under the Guaranties or the Agreements, and Plaintiff has suffered financial loss resulting from Gasbarra's failure to fulfill his obligations under the Guaranties. Thus, Plaintiff has proven Gasbarra's breach of the Guaranties. Moreover, the analysis pertaining to Gasbarra's breach of the DAN is the same as that of Premier's breach of the DAN above. Therefore, the court must grant summary judgment against Gasbarra on Count III for breach of the Guaranties and on Count IV for breach of the DAN.

## II. Damages

Although Plaintiff is entitled to summary judgment on all three claims, the court requires

further proceedings to determine the extent of the damages Premier and Gasbarra owe to Coldwell Banker. Plaintiff argues that the court should disregard any factual dispute regarding damages raised by Gasbarra in his response since the response fails to comply with Local Rule 56.1. The court construes the submissions of a *pro se* litigant leniently, however. Even where the nonmoving party completely fails to respond to the movant's facts, summary judgment is appropriate *only* if there is no genuine issue of material fact. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). That is, Plaintiff stills bears the burden of establishing that there is no genuine issue of material fact regarding the calculation of its damages.

Here, Plaintiff has not satisfied the court that there are no genuine issues of material fact regarding the amount of damages for which Premier and Gasbarra are liable. There are several aspects of the damages award that require further exploration. First, while the March 4 and June 30, 2010 letters from Coldwell Banker to Gasbarra state that the remaining DAN principal is $100,000, Coldwell Banker now seeks $150,000 in damages owed under the DAN without explanation of the inconsistency. Second, the Custom Account Status Report reveals another possible discrepancy; despite the fact that the Agreements say the advertising fees shall not exceed $1,000 per office per month (Agreements ¶ 8.2), the Report routinely reflects monthly advertising fees in excess of $1,000 for each of the four Premier brokerage offices. (*See, e.g.*, Report at 7-9, 19-21, 34-35, 42-43.) Third, Gasbarra asserts that PPA awards for 2006, 2007, and 2008 were not credited against the fees owed, despite Coldwell Banker's prior practice of doing so. (Def. Gasbarra's Statement of Facts ¶ 4.) Coldwell Banker responds that payment of the PPA awards is contingent upon a franchisee's compliance with the franchise agreement and asserts that because Premier breached the Agreements, Coldwell Banker had no obligation to pay or credit Premier for the PPAs. (Pl.'s Resp. ¶ 4.) But the provision in the Agreements that Plaintiff cites in support of this assertion says only that Plaintiff "may" impose such a condition, not necessarily that it did. (Agreements ¶ 7.3.) Moreover, the January 2004 Letter Agreement demonstrates that

Premier and Gasbarra have defaulted on substantial fees in the past, yet until now, Gasbarra insists, Coldwell Banker has always credited PPA payments to his unpaid balance. (Def. Gasbarra's Statement of Facts ¶ 4.) Finally, the damages award suggested by Plaintiff does not include attorneys' fees or interest earned subsequent to its filing for summary judgment. Therefore, further proceedings are necessary to ascertain the amount of damages Defendants owe to Plaintiff.

## CONCLUSION

For the reasons explained herein, the court grants Plaintiff's motion for summary judgment [41] on all three counts. A status is set for April 10, 2012 at 9:00 a.m., at which time the court will schedule a hearing to determine the extent of the damages owed. The parties are encouraged to attempt to settle their differences.

ENTER:

Dated: March 28, 2012

_____
REBECCA R. PALLMEYER
United States District Judge